UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| FOND DU LAC BAND OF LAKE SUPERIOR CHIPPEWA, | Case No. 22-CV-0170 (PJS/LIB) |
| Plaintiff, | |
| v. | |
| CONSTANCE CUMMINS, Supervisor of the Superior National Forest; RANDY MOORE, Chief of the U.S. Forest Service; UNITED STATES FOREST SERVICE; THOMAS VILSACK, Secretary of Agriculture; UNITED STATES DEPARTMENT OF AGRICULTURE; POLY MET MINING, INC.; and NORTHSHORE MINING CO., | ORDER |
| Defendants. | |

---

Vanessa L. Ray-Hodge, SONOSKY, CHAMBERS, SACHSE, MIELKE & BROWNELL, LLP; Matthew L. Murdock, SONOSKY, CHAMBERS, SACHSE, ENDRESON & PERRY, LLP; Sean W. Copeland, Tribal Attorney, FOND DU LAC BAND OF LAKE SUPERIOR CHIPPEWA, for plaintiff.

Monte A. Mills, Aaron P. Knoll, Farah Famouri, GREENE ESPEL PLLP; Jay C. Johnson, VENABLE LLP, for defendant Poly Met Mining, Inc.

Plaintiff Fond du Lac Band of Lake Superior Chippewa ("the Band") filed this action against the United States Forest Service ("Forest Service") and other federal agencies and agency officials. The Band brought suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., seeking judicial review of a land

exchange between the Forest Service and intervenor-defendant Poly Met Mining, Inc. ("PolyMet").

This matter is before the Court on PolyMet's objection to the April 29, 2024, order of Magistrate Judge Leo I. Brisbois on the Band's motion for discovery sanctions. Judge Brisbois denied the motion for sanctions but found that PolyMet's second amended privilege log was deficient in several respects and that PolyMet had, as a result, failed to meet its burden of establishing that the relevant documents are privileged. Judge Brisbois therefore ordered PolyMet to produce them.

A magistrate judge's ruling on nondispositive pretrial matters may be reversed only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Having reviewed Judge Brisbois's order, the parties' briefing, and the relevant portions of the record, the Court cannot find that the order is clearly erroneous or contrary to law. The order is therefore affirmed.

The discovery at issue concerns documents relating to PolyMet's transfer to defendant Northshore Mining Company ("Northshore") of a portion of the land that PolyMet acquired from the Forest Service. This transfer, in turn, is relevant to PolyMet's laches defense. In response to the Band's discovery requests for all documents relating to the Northshore conveyance, PolyMet took the position that the only relevant documents were the final transaction documents effectuating the sale.

-2-

The Band moved to compel, and Judge Brisbois disagreed with PolyMet, finding, among other things, that because laches is an equitable defense, all evidence relating to the transaction was potentially relevant. Judge Brisbois accordingly granted the Band's motion to compel discovery and ordered PolyMet to produce a privilege log for any documents that it withheld on the basis of privilege. At the same time, Judge Brisbois denied the Band's motion insofar as it sought discovery against non-party PolyMet Mining Corp. ("PolyMet Corp."), which is PolyMet's former corporate parent. In so ruling, Judge Brisbois relied on PolyMet's representations that PolyMet Corp. was a separate entity from PolyMet and that PolyMet Corp. was a stranger to the Northshore conveyance. The Court overruled PolyMet's objection to Judge Brisbois's order.

PolyMet then produced some documents and a lengthy privilege log. The Band objected to the log for various reasons, including that it lacked sufficient detail. Following "unfruitful meet and confer discussions spanning multiple weeks," ECF No. 193 at 8,[1] the Band filed a motion for sanctions. After oral argument on the motion, Judge Brisbois held the Band's motion in abeyance and ordered PolyMet to review its privilege log and provide additional information to the Band, following which the parties were to meet and confer and then inform the Court of the status of their dispute. *See* ECF No. 193 at 8; ECF No. 185 at 31–33.

_____

[1]When citing documents by ECF number, the Court cites to the electronically generated page numbers at the top of the page.

During this last round of meet-and-confer sessions, PolyMet produced an amended and then later a second amended privilege log, which is the version currently at issue. The parties were not able to resolve their dispute through the meet-and-confer process, and, accordingly, they filed a joint letter setting forth their respective positions. ECF No. 187. Following receipt of the letter, Judge Brisbois issued his order denying the motion for sanctions but compelling the production of approximately 500 documents listed on the second amended privilege log. It is that order to which PolyMet now objects.

Judge Brisbois held that, by including PolyMet Corp. on the communications at issue, PolyMet waived any claim of privilege. He further held that, to the extent that any entry on PolyMet's second amended privilege log failed to clarify whether joint employees of the two corporations were acting on behalf of PolyMet or instead on behalf of PolyMet Corp., PolyMet failed to meet its burden to establish that the communication at issue is privileged.

There is nothing clearly erroneous or contrary to law about either of these holdings. It is hornbook law that "[v]oluntary disclosure of attorney client communications expressly waives the privilege." *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998). Likewise, it is well established that PolyMet, as the party claiming privilege, had the burden of proof on the issue. *See United States v. Ivers*, 967

F.3d 709, 715 (8th Cir. 2020).  And, given the length of time and number of opportunities that PolyMet had to produce an adequate privilege log, Judge Brisbois acted within his discretion in holding against PolyMet any ambiguity concerning the capacity in which each listed employee was acting.

PolyMet does not take issue with any of this.  Instead, PolyMet contends that Judge Brisbois erred by failing to recognize that communications including PolyMet Corp. remain privileged because the two companies were jointly represented by the attorneys on PolyMet's privilege log.  *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) ("[T]he co-client (or joint-client) privilege . . . applies when multiple clients hire the same counsel to represent them on a matter of common interest.").  But PolyMet never made this argument to Judge Brisbois, and therefore cannot make it now.  *See Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("Ridenour was required to present all of his arguments to the magistrate judge, lest they be waived."); *Hammann v. 1–800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947-48 (D. Minn. 2006) (citing *Madol v. Dan Nelson Auto. Grp.*, 372 F.3d 997, 1000 (8th Cir. 2004) ("A party cannot, in his objections to an R&R, raise arguments that were not clearly presented to the magistrate judge.").

PolyMet defends its failure to make this argument by contending that it had no reason to make it, as at the time the Band was seeking sanctions based on alleged

deficiencies in the privilege log, not arguing that PolyMet had altogether waived the

privilege by disclosing communications to PolyMet Corp.  But at the March 12, 2024,

hearing on the Band's motion for sanctions, both the Band and Judge Brisbois expressly

raised the issue of PolyMet Corp. being noted on the privilege log, with Judge Brisbois

pointedly asking:

> [I]t's Rule 101—Class 101 evidence in law school that if you
> bring a third party into those communications, you lose that
> privilege.
>
> So how can I not, *on that basis alone* and the record that
> already exists in front of this Court, find that the privilege
> log is in some fashion deficient when you include
> communications to PolyMet Corporation on that log?

ECF No. 185 at 16 (emphasis added).  As noted, following the hearing, Judge Brisbois

held the Band's motion in abeyance while the parties met and conferred and ultimately

filed a joint letter setting forth their respective positions.  In short, PolyMet had an

*opportunity* to argue for the application of the joint-representation rule—both when it

met with the Band in the meet-and-confer process and then when it presented its

position in the joint letter to Judge Brisbois.  Moreover, PolyMet had every *reason* to do

so in light of Judge Brisbois's pointed question about the presence of PolyMet Corp. on

the privilege log.

Relatedly, PolyMet also seems to imply that, by informing Judge Brisbois (and

offering evidence) that PolyMet and PolyMet Corp. were joint clients, it did, in fact,

raise the argument.  *See* ECF No. 200 at 9 (asserting that Judge Brisbois "should have recognized" that the joint-representation rule applied).  But PolyMet's argument elides the fact that, while litigating the Band's initial motion to compel in October 2023, PolyMet represented to Judge Brisbois that PolyMet Corp. was *not* involved in the Northshore conveyance and that its counsel did *not* represent PolyMet Corp.

In its objection, PolyMet contends that, "when counsel told Judge Brisbois at the hearing 'that they did not represent PolyMet Mining Corp.,' they were explicitly talking about the situation after" February 2023—that is, after PolyMet converted into an LLC.  ECF No. 200 at 10.  But PolyMet ignores that there were *two* hearings in front of Judge Brisbois—one on October 30, 2023 (on the Band's motion to compel) and the other on March 12, 2024 (on the Band's motion for sanctions).  PolyMet is referring to the March hearing, while ignoring that, at the October hearing, PolyMet's attorney took pains to portray PolyMet Corp. as having nothing to do with the Northshore conveyance:

> To be clear, I don't represent PolyMet Mining Corp. PolyMet Mining Corp is not the party here.  PolyMet Mining, Inc. is the party.  PolyMet Mining Corp didn't exchange land with the Forest Service.  PolyMet Mining, Inc. did.  And PolyMet Mining Corp did not convey land to Northshore.  That was PolyMet Mining, Inc.

ECF No. 117 at 50.  Only a few months later, PolyMet reversed itself, asserted that, in fact, PolyMet Corp. was involved in the Northshore conveyance, and asserted that, in fact, the two companies did share counsel with respect to that transaction.  Given this

context, the Court rejects PolyMet's implication that it preserved its argument that the joint-representation rule applies.

Moreover, the joint-representation rule requires not merely that the clients be jointly represented, but that the clients share a common interest. *In re Teleglobe*, 493 F.3d at 362-63. PolyMet's prior representations to Judge Brisbois indicated that it did *not* share a common interest with PolyMet Corp. with respect to the Northshore conveyance.[2] PolyMet's later reversal—and the resulting confusion—is exactly why it was incumbent on PolyMet to clearly present its joint-representation argument so that the issue could have been adequately briefed and argued by the parties and considered by Judge Brisbois.

Even setting all of this aside, the Court disagrees with PolyMet's (apparent) position that it could invoke the joint-representation rule by informing Judge Brisbois of nothing more than the fact PolyMet and PolyMet Corp. were joint clients. Determining whether and to what extent the joint-representation rule applies is often a difficult and fact-intensive inquiry:

---

[2]PolyMet might contend that its representations were factually correct and that the fact that PolyMet Corp. did not itself convey the land does not mean that the two companies lacked a common interest. Such an argument would ignore that PolyMet's representations were made in the context of resisting the Band's attempt to obtain discovery from PolyMet Corp. regarding the land conveyance. Given this context, PolyMet's statements strongly implied that PolyMet Corp. had nothing to do with the conveyance.

> In determining whether parties are "joint clients," courts may consider multiple factors, including but not limited to matters such as payment arrangements, allocation of decisionmaking roles, requests for advice, attendance at meetings, frequency and content of correspondence, and the like. *See McMorgan*, 931 F. Supp. at 702; *In re Colocotronis Tanker Secs. Litig.*, 449 F. Supp. 828, 830–32 (S.D.N.Y. 1978); *Connelly v. Dun & Bradstreet, Inc.*, 96 F.R.D. 339, 342 (D. Mass. 1982). In addition, the joint client exception presupposes that communications have been "made in the course of the attorney's joint representation of a 'common interest' of the two parties." *Eureka*, 743 F.2d at 937. The term "common interest" typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest. *See, e.g., McMorgan*, 931 F. Supp. at 701; *NL Indus. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 230–31 (D.N.J. 1992). Thus, the proponent of the exception must establish cooperation in fact toward the achievement of a common objective. *See Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999).

*FDIC v. Ogden Corp.*, 202 F.3d 454, 461–62 (1st Cir. 2000).

PolyMet seems to imply that, when the joint clients are a parent company and its wholly owned subsidiary, none of this analysis is necessary because the companies *automatically* share each other's legal interests. Although there is some authority to this effect, *see In re Teleglobe Commc'ns Corp.*, 493 F.3d at 366 ("Delaware courts have recognized that parents and their wholly owned subsidiaries have the same interests because all of the duties owed to the subsidiaries flow back up to the parent" (citation omitted)), this does not appear to be a universal rule, *see In re Grand Jury Subpoena #06-1*, 274 F. App'x 306, 311 (4th Cir. 2008) (per curiam) ("Subsidiary has failed to

demonstrate that the communications reflected any legal matter of common interest."

(citation and quotation marks omitted)).  Given these conflicting authorities, it is at least

arguable whether, as a matter of law, a parent and its wholly owned subsidiary always

and automatically share all legal interests in common.  In any event, PolyMet could not

have expected Judge Brisbois to decide this issue—or any other issue related to

application of the joint-representation rule—without briefing and argument on the

matter.

For these reasons, PolyMet's objection is overruled, and Judge Brisbois's order is

affirmed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the objection of defendant Poly Met Mining, Inc. [ECF

No. 200] is OVERRULED and the order [ECF No. 193] is AFFIRMED.


Dated:  January 3, 2025                    s/Patrick J. Schiltz
                                                      Patrick J. Schiltz, Chief Judge
                                                      United States District Court